**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **GENEVIEVE M. KING,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-cv-932-ALM-KPJ** |
| | § | |
| **MARTIN O'MALLEY,** | § | |
| ***Commissioner of Social Security,*** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Genevieve M. King ("Ms. King") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB"). Having considered the briefs submitted by the parties and the administrative record, the Court recommends the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

## I. APPLICABLE LAW

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not

engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[1] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i)–(iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

**B. Standard of Review**

The standard of review in a social security appeal is whether the Commissioner's final decision[2] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)) (internal quotation marks omitted). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (per curiam)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II. BACKGROUND AND PROCEDURAL HISTORY

Ms. King was born in 1963, completed three years of college, and last worked in 2017 as an executive assistant.[3] *See* Tr. 274, 278–79. On November 26, 2019, Ms. King protectively filed an application for DIB, alleging disability since August 31, 2017, due to arthritis of the hands, lower back, and feet; spinal stenosis; fibromyalgia; degenerative disc disease; and depression caused by the foregoing conditions. *See* Tr. 212, 274, 278. The Social Security Administration (the "SSA") denied Ms. King's claim initially on December 14, 2020, and upon reconsideration on March 5, 2021.[4] *See* Tr. 55–87. Thereafter, Ms. King filed a request for a hearing. *See* Tr. 98–99. On November 12, 2021, Administrative Law Judge John Dowling (the "ALJ") held a hearing. *See* Tr. 33–54. The hearing was attended by Ms. King, her attorney, and a vocational expert ("VE"). Tr. 33.

On December 13, 2021, the ALJ issued an unfavorable decision denying Ms. King's claim. *See* Tr. 20–28. In his decision, the ALJ found Ms. King met the insured status requirements of the Social Security Act (the "Act") through September 30, 2021. Tr. 22. At step one, the ALJ found that Ms. King had not engaged in substantial gainful activity from August 21, 2017, her alleged onset date ("AOD"), to September 30, 2021, her date last insured ("DLI"). Tr. 22. At step two, the ALJ found that Ms. King had the following severe impairments: degenerative disc disease; chronic pain syndrome; and fibromyalgia. Tr. 22. The ALJ also found that Ms. King suffered from depression, but he determined that it was a non-severe impairment. *See* Tr. 23. At step three, the ALJ found that none of Ms. King's impairments, alone or in combination, met or medically

---

[3] Documents 5-1 through 5-10 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[4] At the reconsideration level, Ms. King did not respond to calls and letters requesting additional information regarding her mental impairments and, as a result, there was "insufficient evidence to evaluate [Ms. King's] claim." Tr. 81–82.

equaled a Listing. Tr. 24. Because the ALJ found that none of the impairments met a Listing, he assessed Ms. King's RFC. *See* Tr. 25–27. The ALJ found that Ms. King had the RFC to:

> perform sedentary work . . . except she could occasionally climb ramps or stairs, and never climb ladders, ropes, or scaffolds. She was able to occasionally stoop, kneel, crouch, or crawl. She needed to avoid frequent exposure to extreme cold and excessive vibration. She was capable of frequent bilateral handling and fingering.

Tr. 25. At step four, relying primarily on the VE's testimony, the ALJ found that Ms. King was able to perform past relevant work as an administrative assistant and, therefore, was not disabled within the meaning of the Act. *See* Tr. 27–28. Due to this finding, the ALJ did not proceed to step five. *See* Tr. 28.

Ms. King requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 323–28. On July 29, 2022, the Appeals Council denied the request for review. *See* Tr. 5–8. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Ms. King filed her appeal to this Court on November 1, 2022. *See* Dkt. 1.[5]

## III. ANALYSIS

On appeal, Ms. King raises several arguments, including that the ALJ: (1) failed to consider her depression, as well as any restrictions associated with that impairment, in his RFC discussion; and (2) failed to sufficiently articulate the persuasiveness of the administrative medical findings of the state agency medical consultant (the "SAMC") and the opinion of the consultative examiner

[5] A claimant has sixty days after receiving "notice of the Appeals Council's action" to file an appeal. 20 C.F.R. § 404.981. However, "[a]ny party . . . may request that the time for filing an action . . . be extended." *Id.* § 404.982. If there is "good cause for missing the deadline," the time to file an appeal "will be extended." *Id.* On September 19, 2022, the Appeals Counsel extended Ms. King's deadline by thirty days. Tr. 1. The extension began running five days after the decision was mailed. *See* Tr. 1. Thus, Ms. King had until October 24, 2022 to appeal. As Ms. King filed her appeal on November 1, 2022, it was untimely. *See* Dkt. 1. However, the Commissioner did not raise this issue in his answer or brief. *See* Dkts. 5; 11. Therefore, the Court considers this issue waived for the purposes of appeal. *See, e.g.*, *Redford v. Comm'r of Soc. Sec. Admin.*, No. 21-cv-333, 2022 WL 16626738, at *1 n.1 (E.D. Tex. Oct. 5, 2022) ("Because the Commissioner did not raise the timeliness of the action in his answer or brief, the court will consider the merits.").

(the "CE"). *See* Dkt. 9 at 13–17. The Court agrees with Ms. King on both points of error and concludes that the decision of the Commissioner should be reversed.

**A. Consideration of Non-Severe Impairments**

"Even when an ALJ finds that a claimant's mental impairments are non-severe, the ALJ must still consider the impact of any non-severe impairments—either singly or in combination with other conditions—when he determines [the claimant's] RFC." *E.g.*, *Gary P. v. Saul*, No. 20-cv-68, 2021 WL 3518534, at *5 (N.D. Tex. July 19, 2021) (cleaned up) (quoting *Gonzalez v. Colvin*, No. 15-cv-685, 2016 WL 107843, at *5 (N.D. Tex. Jan. 11, 2016)); *see* 20 C.F.R. § 404.1545(a)(2) (finding that the ALJ must "consider all of [the claimant's] medically determinable impairments . . . , including [those] medically determinable impairments that are not 'severe'"). "This is because even non-severe limitations may combine with other severe impairments to prevent an individual from doing past relevant work or may narrow the range of work that the individual can perform." *Tusken v. Astrue*, No. 08-cv-657, 2010 WL 2891076, at *12 (N.D. Tex. May 25, 2010).

Provided the ALJ considers whether any limitations associated with the non-severe impairments are necessary, he need not actually include any such limitations. *See Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 489 (W.D. Tex. 2022). Thus, numerous courts in the Fifth Circuit have found no error where the ALJ considers the limiting effects of the non-severe impairment but assesses no accompanying limitations. *Id.* (quoting *Martha L. v. Saul*, No. 20-cv-3, 2021 WL 3610316, at *5 (N.D. Tex. July 21, 2021), *R. & R. adopted*, 2021 WL 3604082 (N.D. Tex. Aug. 13, 2021)); *see Gonzalez*, 2016 WL 107843, at *8.

In the present case, Ms. King argues that, while the ALJ found her depression to be a non-severe impairment, he failed to "offer any justification for his omission" of any corresponding

limitations. *See* Dkt. 9 at 14. As the ALJ did not "properly" consider whether any limitations were necessary, Ms. King concludes that "remand is required." *Id.* at 16. The Commissioner responds that the ALJ specifically stated that his RFC assessment considered the limitations caused by Ms. King's depression. *See* Dkt. 11 at 4. Additionally, because the ALJ found that Ms. King's depression was non-severe, the Commissioner argues that "it is not surprising that [t]he ALJ's RFC assessment did not identify additional functional limitations." *See id.* at 9–10. The Court agrees with Ms. King.

To determine the severity of Ms. King's depression, the ALJ properly evaluated the following four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. Tr. 23; *see* 20 C.F.R. § 404.1520a(c)(3). First, the ALJ found that Ms. King had a mild limitation in her ability to understand, remember, and apply information. Tr. 23. The ALJ reasoned that Ms. King was able to answer questions "regarding her work history and impairments" at the hearing. Tr. 23. Further, Ms. King reported that she "cares for her son, does housework, drives a car, shops in stores and by computer, and manages her own finances." Tr. 23. Second, the ALJ found that Ms. King had a mild limitation in her ability to interact with others. Tr. 23. Despite reporting that "she is not as socially active," she stated that she "visits with family for meals, birthdays, and holidays." Tr. 23. In addition, Ms. King reported that she "does not have any problems getting along with family, friends, neighbors," and "authority figures." Tr. 23. Third, the ALJ found that Ms. King had a mild limitation in her ability to concentrate, persist, or maintain pace. Tr. 23. The ALJ explained that Ms. King "cares for her son, does housework, drives a car, shops in stores and by computer, and manages her own finances." Tr. 23. Furthermore, she can follow written and spoken instructions and "pays attention for ten to fifteen minutes at a time."

Tr. 23. Finally, the ALJ found that Ms. King had a mild limitation in her ability to adapt and manage herself. Tr. 23. The ALJ based this finding on the fact that Ms. King "reported no problems with personal care due to mental health symptoms and said she has never been fired or laid off from a job because of problems getting along with other people." Tr. 23. In so doing, the ALJ found that Ms. King had a mild limitation in each of the four areas. Tr. 24. Therefore, the ALJ concluded that Ms. King's depression was a non-severe impairment. Tr. 24; *see* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe . . . ."). The ALJ also noted that his analysis was "not an [RFC] assessment" but merely an evaluation of the severity of Ms. King's mental impairment. Tr. 24. Indeed, the ALJ indicated that determining Ms. King's RFC would require "a more detailed assessment" of her mental impairment. *See* Tr. 24 ("The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.").

Because the ALJ determined that Ms. King had other severe impairments, he proceeded to later steps in the sequential evaluation process and assessed Ms. King's RFC. *See* Tr. 24–25. Although the ALJ stated that his RFC assessment "reflect[ed] the degree of limitation" found during the "mental function analysis," he neither adopted any mental limitations nor explained why such limitations were excluded from Ms. King's RFC. *See* Tr. 25–27. Even when an impairment is non-severe, the ALJ must "explain *why* he omitted . . . mental limitations from the [RFC] formulation." *See Castillo*, 599 F. Supp. 3d at 489 ("Yet absent from the ALJ's opinion is an explanation for why these mental limitations shouldn't be reflected in [the claimant's RFC]. Accordingly, the ALJ failed to properly evaluate [the claimant's] mental limitations in formulating his [RFC] determination."); *Martha L.*, 2021 WL 3610316, at *5 (same). The failure to do so constitutes legal error. *See, e.g.*, *Audrey M. D. v. Comm'r of Soc. Sec.*, No. 21-cv-2425, 2022 WL

18356464, at *3 (N.D. Tex. Dec. 28, 2022) ("The ALJ's failure to explain why she omitted any mental limitations from the RFC formulation . . . constitutes legal error." (collecting cases)). Thus, the ALJ erred by failing to explain why Ms. King's depression—either singly or in combination with her severe impairments—did not warrant additional restrictions to her RFC.

**B. Medical Opinions and Prior Administrative Medical Findings**

Under the revised rules for the evaluation of medical opinion evidence and prior administrative medical findings,[6] the ALJ must articulate the persuasiveness of each medical opinion and administrative finding in the record. *See* 20 C.F.R. § 404.1520c(b). Persuasiveness is based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors supporting or detracting from the persuasiveness of the opinion. *Id.* § 404.1520c(c)(1)–(5). The "most important factors," and the only factors the ALJ *must* discuss, are supportability and consistency. *See id.* § 404.1520c(b)(2).

Supportability and consistency are defined as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 404.1520c(c)(1)–(2). Therefore, supportability refers to the relationship between the conclusions drawn by the medical opinion or administrative finding and the evidence used to support those conclusions, while consistency refers to "how well a medical source is supported, or not supported, by the entire record." *See, e.g., Henderson-Washington v. Comm'r of Soc. Sec.*,

[6] The revised rules apply to claims filed on or after March 27, 2017, and no longer permit deference to be given to any medical opinion. *See* 20 C.F.R. § 404.1520c(a).

No. 23-cv-6, 2023 WL 9005588, at *3 (N.D. Tex. Dec. 28, 2023) (quoting *Heleodoro C. v. Comm'r, Soc. Sec. Admin.*, No. 20-cv-3520, 2022 WL 4359148, at *3 (N.D. Tex. July 20, 2022), *R. & R. adopted sub nom. Castro v. Comm'r, Soc. Sec. Admin.*, 2022 WL 4360555 (N.D. Tex. Sept. 19, 2022)) (internal quotation marks omitted).

There is little "caselaw concerning what constitutes a sufficient 'explanation' of supportability and consistency." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (citing *Moore v. Saul*, No. 20-cv-48, 2021 WL 754833, at *3 n.1 (S.D. Miss. Feb. 26, 2021)). But the "measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Id.* (internal citations omitted) (collecting cases); *see Price v. Comm'r of Soc. Sec.*, No. 22-cv-3504, 2023 WL 8037853, at *3 (S.D. Tex. Nov. 20, 2023) (same); *Silvas v. Kijakazi*, No. 23-cv-2, 2023 WL 8456151, at *4 (W.D. Tex. Nov. 3, 2023) (same), *R. & R. adopted sub nom. Silvas v. Comm'r of Soc. Sec.*, 2023 WL 8253739 (W.D. Tex. Nov. 29, 2023). "In other words, 'there must be a discernable 'logic bridge' between the evidence and the ALJ's persuasiveness finding.'" *Silvas*, 2023 WL 8456151, at *4 (quoting *Chavarria v. Kijakazi*, No. 22-cv-407, 2023 WL 3984857, at *3 (W.D. Tex. June 13, 2023)).

Boilerplate language divorced from the evidence in the record is generally insufficient to satisfy the ALJ's obligation. *See Bridges v. Comm'r of Soc. Sec.*, No. 20-cv-89, 2021 WL 2908671, at *2 (N.D. Miss. June 21, 2021), *R. & R. adopted*, 2021 WL 2907892 (N.D. Miss. July 9, 2021); *see also Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) ("[I]t should go without saying that cursory, boilerplate language about carefully considering the entire record does not constitute

an explanation for rejecting a medical opinion.”). The ALJ must instead cite “specific evidence in the record” supporting his supportability and consistency determinations. *See, e.g.*, *Morgan v. Kijakazi*, No. 22-cv-631, 2023 WL 6238052, at *6 (E.D. Tex. Aug. 31, 2023) (collecting cases), *R. & R. adopted*, 2023 WL 6221773 (E.D. Tex. Sept. 25, 2023).

Ms. King argues that the ALJ did not meaningfully discuss the persuasiveness of the SAMC’s administrative medical findings and the CE’s opinion, thereby precluding the Court from conducting a meaningful review of both. *See* Dkt. 9 at 16–17. The Commissioner responds by pointing to the ALJ’s conclusion that the SAMC’s findings and the CE’s opinion were “inconsistent with evidence in the record, including consistently normal exam results, and not supported.” *See* Dkt. 11 at 13. Thus, the Commissioner concludes that the ALJ correctly performed his regulatory duty. *See id.* at 14. The Court agrees with Ms. King.

In his decision, the ALJ found the SAMC’s administrative findings unpersuasive. Tr. 23. In reaching this conclusion, the ALJ stated:

> The [SAMC] found that [Ms. King] had moderate limitations in interacting with others, concentration, persistence, and maintaining pace, and adapt or managing oneself. (Exhibit 1A) This is inconsistent with and not supported by the evidence discussed above, including consistently normal exam results and largely intact functioning on the claimant’s function report.

Tr. 23. The ALJ also found the CE’s opinion unpersuasive. In a similar paragraph, the ALJ stated:

> [The CE] opined that the claimant would struggle with detailed and complex instructions, could be challenged to use reason and judgment to make work-related decisions, was limited to concentrate, persist, and maintain pace, would have difficulty relating to and working with supervisors, coworkers, and the public on a consistent and independent basis, and that her mental disorder would keep her from regulating her emotions, controlling her behavior, and/or maintaining her well-being in a work setting. (Exhibit 4F) This is inconsistent with and not supported by the evidence discussed above, including consistently normal exam results over a long period of time and largely intact functioning on the claimant’s function report.

Tr. 24. While the ALJ adequately explained consistency in the above discussion, he failed to provide any reviewable supportability analysis. Instead, the ALJ merely asserts that the SAMC's findings and the CE's opinion are "inconsistent with and not supported by the evidence discussed above." Tr. 23–24. But this demonstrates a lack of consistency—not an absence of supportability. *See Henderson-Washington*, 2023 WL 9005588, at *3 ("While 'supportability' measures the degree of relatedness between a medical provider's opinion and the medical evidence he provides to support that opinion, 'consistency' is 'an all-encompassing inquiry' that focuses on 'how well a medical source is supported, or not supported, by the entire record.'" (quoting *Heleodoro C.*, 2022 WL 4359148, at *3)). By failing to discuss supportability, the ALJ committed legal error. *See, e.g.*, *Lee v. Comm'r of Soc. Sec.*, No. 21-cv-1390, 2022 WL 4490176, at *5 (S.D. Tex. Sept. 27, 2022) ("[T]he regulations require the ALJ's decision to include a supportability conclusion and explanation, and failure to do so constitutes legal error." (citing *Cardenas v. Kijakazi*, No. 21-cv-135, 2022 WL 2719044, at *7 (S.D. Tex. June 3, 2022), *R. & R. adopted sub nom. Cardenas v. Saul*, 2022 WL 2715204 (S.D. Tex. July 12, 2022))).

**C. Prejudice**[7]

"'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). Accordingly, the Court may not vacate the judgment unless the claimant shows he was prejudiced by the ALJ's error. *See Demarcus G. v. Kijakazi*, No. 20-cv-2103, 2021 WL 6297778, at *5 (N.D. Tex. Dec. 17, 2021) (citing *Mays*, 837 F.2d at 1364), *R. & R. adopted*, 2022 WL 60333 (N.D. Tex. Jan. 5, 2022).

---

[7] The Commissioner does not make any argument directed at whether Ms. King was prejudiced by the legal errors identified above. *See* Dkt. 11.

Prejudice occurs when procedural errors cast doubt on the existence of substantial evidence in support of the ALJ's decision. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (per curiam).

The Court finds that both errors identified above were not harmless. First, the failure to consider whether Ms. King's depression warranted additional restrictions was prejudicial. Had the ALJ done so, he may have incorporated additional restrictions precluding Ms. King from performing her past relevant work. Indeed, at the hearing, the VE concluded that Ms. King could not perform her past relevant work as an executive assistant if she was off task fifteen percent or more of the workday. Tr. 52. Thus, "[p]roper incorporation of mental limitations into the RFC could have resulted in a different outcome at step four." *Martha L.*, 2021 WL 3610316, at *7; *see Tommy L. v. Comm'r of Soc. Sec. Admin.*, No. 22-cv-2882, 2024 WL 734634, at *5 (N.D. Tex. Jan 29, 2024) ("[T]he VE testified that if a person missed work more than one day per month, or would be off task ten minutes per hour, they could not maintain competitive employment. This additional questioning of the VE demonstrates that the ALJ's 'determination could have been different had the ALJ properly incorporated the mental limitations [the claimant] faces into the RFC.'" (internal citations omitted)); *see also Castillo*, 599 F. Supp. 3d at 490 ("Accordingly, without a proper analysis of [the claimant's] mental functional limitations and incorporation of those limitations, as appropriate, into a hypothetical for the [VE], remand is required on this record.").

For similar reasons, the ALJ's failure to discuss the supportability of the SAMC's administrative findings and the CE's opinion was prejudicial. The ALJ discarded—without sufficient explanation—the only opinion evidence supporting a finding of disability. *See* Tr. 52. Thus, "[t]he legal error clearly implicates [Ms. King's] substantive rights," and this case should be

remanded for further proceedings. *Cooley*, 587 F. Supp. 3d at 501; *see also Kilby v. Kijakazi*, No. 20-cv-3035, 2022 WL 1797043, at *5 (S.D. Tex. Mar. 15, 2022) (remanding "for the ALJ to sufficiently explain" the persuasiveness of the medical opinion because the court could "only speculate as to what conclusion the ALJ would have reached had he properly applied the supportability factor in his analysis").

## IV. RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 1st day of March, 2024.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE